# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| **REINIER REY CORRALES** and **PHONG DANG,** individually and on behalf of all others similarly situated, | : : : : | Civil Action No.: 5:23-cv-00555-OLG |
|  | : | |
| Plaintiffs, | : : | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
|  | : | |
| **v.** | : : | |
|  | : | |
| **CARGO LEASING SOLUTIONS LLC, AMAZON.COM, INC., and AMAZON LOGISTICS, INC.,** | : : : : | |
|  | : | |
| Defendants. | | |

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE
## SETTLEMENT AGREEMENT, AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   PROCEDURAL HISTORY............................................................................ 2

III.  DISCUSSION ............................................................................................... 4

       A.    Applicable Legal Standard....................................................................... 4

       B.    The Terms of the Proposed Settlement Agreement are Fair and Reasonable
           and Resolve a *Bona Fide* Dispute ......................................................... 5

           1.    A *Bona Fide* Dispute Existed Between the Parties................................. 5

           2.    The Proposed Settlement Agreement is Fair and Reasonable ................... 6

       C.    The Proposed Settlement Agreement Furthers the Purpose of the FLSA ............. 8

       D.    Final Certification of the Settlement Collective Pursuant to 29 U.S.C.
           § 216(b) is Appropriate ........................................................................... 9

       E.    The Request for Attorneys' Fees and Costs Should be Approved....................... 11

       F.    Plaintiffs' Counsel's Expenses Should be Approved ........................................ 17

IV.   CONCLUSION............................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Alaniz v. Maxum Petroleum Operating Co., Inc.*,
No. SA-15-CV-00373-XR, 2016 WL 6462206 (W.D. Tex. Oct. 31, 2016) ............................. 4

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945) ...................................................................................................... 8, 9

*Diaz v. World Accpeptance Corp.*,
No. 1:19-CV-957-RP, 2021 WL 2709677 (W.D. Tex. Jan. 7, 2021) ...................................... 15

*Ellis v. Baptist Mem'l Health Care Corp.*,
No. 3:18-CV-73-SA-JMV, 2021 WL 1206408 (N.D. Miss. Mar. 30, 2021) .......................... 16

*Fuchs v. B & B Star Air Duct & HVAC, LLC*,
No. 1:20-CV-319-RP, 2021 WL 2768851 (W.D. Tex. Jan. 7, 2021) ...................................... 15

*Garza v. Sporting Goods Properties, Inc., No. CIV. A. SA-93-CA-108*,
1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ............................................................................ 14

*Hiser v. NZone Guidance, LLC*,
No. 1:18-CV-1056-RP, 2021 WL 2934896 (W.D. Tex. Jan. 25, 2021) ........................... *passim*

*In re Abrams & Abrams, P.A.*,
605 F.3d 238 (4th Cir. 2010) ........................................................................................ 14, 15

*In re Wells Fargo Wage & Hour Emp. Pracs. Litig. (No. III)*,
18 F. Supp. 3d 844 (S.D. Tex. 2014) .................................................................................... 9

*Johnson v. Georgia Highway Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) .............................................................................................. 12

*Legros v. Mud Control Equip., Co.*,
No. 15 1082, 2017 WL 925730 (W.D. La. Mar. 6, 2017) ...................................................... 12

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin.,*
*Wage & Hour Div.*,
679 F.2d 1350 (11th Cir. 1982) ............................................................................................ 4

*Martinez v. Bohls Bearing Equip. Co.*,
361 F. Supp. 2d. 608 (5th Cir. 2005) ................................................................................. 5, 6

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) .............................................................................................. 6

*Purdie v. Ace Cash Express, Inc.*,
No. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ...................................... 10

*Quintanilla v. A & R Demolition Inc.*,
No. CIV.A. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008)..................................... 17

*Riddle v. Tex-Fin, Inc., No. CIV.A.*,
H-08-3121, 2011 WL 1103033 (S.D. Tex. Mar. 22, 2011) ....................................................... 11

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...................................... 11

*Shaw v. CAS, Inc.*,
No. 5:17-CV-142, 2018 WL 3621050 (S.D. Tex. Jan. 31, 2018)............................................. 10

*Sims v. Hous. Auth. City of El Paso*,
No. EP-10-CV-109-PRM, 2012 WL 10862119 (W.D. Tex. Feb. 29, 2012)............................. 6

*Singer v. City of Waco, Tex.*,
324 F.3d 813 (5th Cir. 2003) ........................................................................................... 13, 14

*Singer v. Wells Fargo Bank, N.A.*,
No. 519CV00679JKPESC, 2020 WL 10056302 (W.D. Tex. July 14, 2020).......................... 15

*Stanley v. Patriot Inspection Servs., Inc.*,
No. 6-20-CV-00283-ADA, 2021 WL 256821 (W.D. Tex. Jan. 26, 2021) .......................... 5, 15

*Steele v. Leasing Enterprises, Ltd.*,
826 F.3d 237 (5th Cir. 2016) ................................................................................................... 11

*Stepp v. Seton Fam. of Hosps.*,
No. 1:16-CV-1251-RP, 2019 WL 13094637 (W.D. Tex. Mar. 25, 2019)........................... 6, 14

*Tharp v. Energes LLC*,
No. 5:15-CV-983-DAE, 2018 WL 7286479 (W.D. Tex. July 16, 2018) .............................. 7, 8

*Trevino v. Colt Oilfield Servs., LLC*,
No. 5-18-CV-01304-FB-RBF, 2019 WL 3816302 (W.D. Tex. May 6, 2019)...................... 4, 8

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ............................................................................................. 11, 15

*Wells v. Sullivan*,
907 F.2d 367 (2d Cir. 1990)..................................................................................................... 14

**Statutes**

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* .............................................. *passim*

## I.    <u>INTRODUCTION</u>

This collective wage and hour lawsuit has been settled, and Plaintiffs Reinier Rey Corrales and Phong Dang ("Plaintiffs") respectfully submit this Unopposed Motion to Approve the Settlement Agreement, and Memorandum in Support (the "Motion") in the above-captioned action against Cargo Leasing Solutions LLC ("Cargo Leasing"), Amazon.com, Inc., and Amazon Logistics, Inc., (together, "Amazon,") (collectively, "Defendants"). As discussed herein, the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute, and warrants this Court's approval.

The terms of the Parties' settlement are confidential, and set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement"), which has been filed under seal (ECF No. 12).

This case alleges that Plaintiffs and Delivery Associates ("DAs") who were paid by Cargo Leasing to deliver packages to customers of Amazon.com in the United States at any time between October 18, 2017 through February 10, 2019 were not paid all overtime compensation owed when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). This case also concerns whether Amazon bears legal responsibility for the alleged violations of the FLSA as a joint employer. The DAs assert their FLSA claims as a collective action under 29 U.S.C. § 216(b). Defendants continue to deny all allegations and dispute any liability with respect to all of the above claims.

Following a series of intensive mediation sessions with the assistance of experienced mediator, Dennis Clifford, Esq., including three in-person mediation sessions, many arms' length video and telephonic discussions, and extensive review and analysis of data exchanged as part of the ADR process, the Parties were able to reach a settlement of the collective claims, which is now presented to the Court for its approval.

1

The negotiated Settlement Agreement provides a reasonable settlement for Plaintiffs and the Settlement Collective Members[1] with respect to their claims for allegedly unpaid overtime wages arising from Defendants' alleged improper wage and hour practices at issue in this case, especially when taking into consideration the possibility that this matter, if not settled now, might not result in any recovery or might result in a recovery less favorable. *See* Schalman-Bergen Decl. ¶ 34. Plaintiffs respectfully submit that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness. Indeed, Courts in this District have previously and recently approved similar settlements involving Delivery Service Providers of Amazon with a similar structure for settlement as a fair and reasonable resolution of a *bona fide* dispute. *See Sizemore-Easter, et al., v. Amazon.com, Inc., et al.*, No. 5:23-cv-00164-HJB, ECF No. 20 (W.D. Tex. Apr. 24, 2023); *Southern Star Express, LLC v. Dorian J. Page*, No. 5:19-cv-01423-DAE, ECF No. 43 (W.D. Tex. Mar. 31, 2021), attached as Exs. A. and B. Defendants do not oppose this Motion.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the Agreement as a fair and reasonable compromise of a *bona fide* dispute, and (2) dismissing this action is in its entirety, with prejudice, subject to the terms of the Agreement.

## II.    PROCEDURAL HISTORY

On April 26, 2019, Plaintiffs, through counsel, notified Defendants of alleged wage-related claims they intended to file on behalf of themselves and a collective of similarly situated individuals, and invited Defendants to explore the potential for pre-litigation resolution of those alleged claims. The Parties agreed to engage in such discussions. Schalman-Bergen Decl. ¶ 21.

---

[1] "Settlement Collective Members" means Plaintiffs and all Delivery Associates who were paid by Cargo Leasing Solutions LLC to deliver packages to customers of Amazon.com in the United States at any time between October 18, 2017 through February 10, 2019.

The Parties engaged in an extensive alternative dispute resolution ("ADR") process in connection with these claims, which continued for more than three years. This process consisted of extensive ADR-related exchange of information and three mediation sessions overseen by an experienced wage and hour mediator, Dennis Clifford, Esq. The mediation sessions took place on July 28-29, 2021; October 27-29, 2021; and March 9, 2022, in Chicago, Illinois. The mediation sessions were attended by the mediator, counsel for the Parties, in-house counsel for Amazon, and counsel for and representatives of Cargo Leasing Solutions LLC. Throughout this ADR process, the Parties, by and through their counsel, engaged in dozens of telephonic and video discussions, as well as written correspondence and negotiations overseen by Mr. Clifford. *Id.* ¶ 22.

In order to appropriately inform the ADR process, the Parties exchanged data and information in connection with the threatened claims, including Amazon's delivery data for Delivery Associates ("DA") who were paid by Cargo Leasing Solutions LLC and delivered packages to customers of Amazon.com, which Plaintiffs' Counsel reviewed and analyzed extensively. This process allowed the Parties to assess the potential liability and possible damages for the asserted claims and engage in informed, good faith, arms-length settlement negotiations. *Id.* ¶ 23.

As a result of the ADR process (including exchange of information), mediations, and settlement negotiations, the Parties have agreed fully and finally to resolve this matter on the terms and conditions described herein. *Id.* ¶ 24.

Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiffs have considered: (a) the facts developed during the mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement

according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs and the Settlement Collective Members to settle their claims against Defendants and the Released Parties (as defined in the Settlement Agreement). *Id.* ¶ 25. Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. *Id.* Amazon further denies that it is a joint employer of the DAs. *Id.* For these reasons, and as set forth herein, Plaintiffs ask the Court to approve the Settlement and approve Counsel's attorneys' fees and costs.

## III.    <u>DISCUSSION</u>

Plaintiffs respectfully request that the Court enter the accompanying proposed order approving the Settlement.

### A.    **Applicable Legal Standard**

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Trevino v. Colt Oilfield Servs., LLC*, No. 5-18-CV-01304-FB-RBF, 2019 WL 3816302, at *1 (W.D. Tex. May 6, 2019) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "A reviewing court must determine that a settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (citing *Alaniz v. Maxum Petroleum Operating Co., Inc.*, No. SA-15-CV-00373-XR, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016)).

To approve a FLSA settlement, the Court must determine whether: (1) the litigation involves a *bona fide* dispute; and (2) the proposed settlement fairly and reasonably resolves the dispute. *See Stanley v. Patriot Inspection Servs., Inc.*, No. 6-20-CV-00283-ADA, 2021 WL

256821, at *1 (W.D. Tex. Jan. 26, 2021) (approving confidential FLSA settlement agreement and finding it "constitute[s] a fair and reasonable compromise on a *bona fide* dispute"); *see also Ortiz v. Trinidad Drilling, LLC, et al.*, No. 5:20-cv-00503-OLG, ECF No. 86 (W.D. Tex. Aug. 11, 2021) (Garcia, J.) (approving confidential settlement where "the settlement fairly resolve[d] a *bona fide* dispute*"*); *Chaffer v. Front Line EMS LLC*, No. 5:23-cv-00562-KR, ECF No. 58 (W.D. Tex. May 12, 2023) (Rodriguez, J.) (approving confidential settlement and noting "[u]nder *Lynn's Food Stores*, the reviewing court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions").

As set forth below, the proposed Settlement Agreement in this case falls well within the range of possible approval, because it meets each of the requirements of substantive and procedural fairness. In addition, the proposed Settlement Agreement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a *bona fide* dispute that furthers the purpose of the FLSA. As such, there are no grounds to doubt the reasonableness of the Settlement Agreement.

    **B.**    **The Terms of the Proposed Settlement Agreement are Fair and Reasonable and Resolve a *Bona Fide* Dispute**

            **1.**    **A *Bona Fide* Dispute Existed Between the Parties**

Courts look to "whether there exists a bona fide dispute" under the FLSA regarding the amount of hours worked or compensation due. *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d. 608, 631 (5th Cir. 2005). Here, with regard to the wage claims at issue, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

    1)    the extent to which DAs were compensated for all overtime hours worked;

    2)    the appropriate rate at which overtime should be paid when DAs worked more than forty (40) hours per week (i.e., half-time or time-and-one-half the

regular rate);

3)    whether Defendants would be able to meet its burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages;

4)    whether Amazon could be held liable for the alleged pay violations as a joint employer;

5)    whether Plaintiffs could obtain and maintain a collective action status of the action; and

6)    whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

*See* Schalman-Bergen Decl. ¶ 26.

Ultimately, the Gross Settlement Amount that was agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue. *Id.*

### 2.    The Proposed Settlement Agreement is Fair and Reasonable

While the Fifth Circuit has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representative, and absent class members. *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109-PRM, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012); *Stepp v. Seton Fam. of Hosps.*, No. 1:16-CV-1251-RP, 2019 WL 13094637, at *2 (W.D. Tex. Mar. 25, 2019) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)).

The Gross Settlement Amount provides Plaintiffs and the Settlement Collective Members with the recovery of unpaid overtime hours worked, and the settlement was carefully negotiated

based on the exchange of information, a substantial investigation by the Parties, and the review and analysis of data and information produced to Plaintiffs. The settlement was negotiated over a three-year time period with the assistance of experienced wage and hour mediator Dennis Clifford, who has substantial experience in the issues underlying this action, and who has mediated a number of cases in the Fifth Circuit and in this District. *See, e.g., Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (mediated by Dennis Clifford); *Sizemore-Easter, et al., v. Amazon.com, Inc., et al.*, No. 5:23-cv-00164-HJB, ECF No. 20 (W.D. Tex. Apr. 24, 2023) (same); *Southern Star Express, LLC v. Dorian J. Page*, No. 5:19-cv-01423-DAE, ECF No. 43 (W.D. Tex. Mar. 31, 2021) (same); Schalman-Bergen Decl. ¶ 28. Mr. Clifford has great familiarity with collective and class action wage and hour law, and helped the parties to reach an arms' length settlement.  The Settlement is not a product of fraud or collusion.

The Gross Settlement Amount is based on an analysis of overtime hours that the Settlement Collective Members worked during the Relevant Time Period, as determined from the records provided. If the Settlement Agreement is approved, all Settlement Collective Members will receive a settlement award check, but only those Settlement Collective Members who sign, deposit and/or cash their Settlement Award will release claims against the Released Parties. Here, under the proposed allocation formula, each Settlement Collective Member will receive a minimum amount. In addition to the minimum payment, Settlement Collective Members will receive a *pro rata* portion of the Net Settlement Amount calculated set forth in the Agreement. *Id*.

In addition, the settlement provides meaningful certain relief rather than speculative relief over a course of an additional number of years of litigation, including potentially appeal. *Id.* ¶ 31. When, in comparison to the proposed Settlement Agreement, proceeding with litigation would require a substantial amount of time to yield a benefit to the Settlement Collective Members, it is

an indication that the proposed settlement is fair, reasonable, and adequate. *See, e.g.*, *Tharp v. Energes LLC*, No. 5:15-CV-983-DAE, 2018 WL 7286479, at *2 (W.D. Tex. July 16, 2018) (finding FLSA settlement fair and reasonable where "[i]n arriving at the proposed settlement, the [p]arties considered the expense and length of continued proceedings necessary to prosecute and defend this case"). In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

Further, the Settlement Agreement was the result of significant investigation, exchange of information, legal and factual disputes, and substantial arm's-length negotiations over the course of over three years. *See Id*. ¶ 32. As described above, Plaintiffs' Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The Gross Settlement Amount is based on an intensive review of the facts and law. *Id.* The proposed Settlement Agreement is the product of careful factual and legal research and significant arm's-length negotiations between the Parties, which warrants approval. *See Trevino*, 2019 WL 3816302, at *2 (approving FLSA settlement where "[t]he settlement agreement was negotiated by experienced attorneys and reflects an arms' length compromise of the disputed claims.").

C.     **The Proposed Settlement Agreement Furthers the Purpose of the FLSA**

The settlement achieved here furthers the purposes of the FLSA by providing the Settlement Collective with reasonable recovery for their alleged unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all Settlement

Collective Members will receive a Settlement Award. *See Hiser*, 2021 WL 2934896, at *3 (quoting *O'Neil* and holding "settlement agreement is consistent with the FLSA's purposes of protecting workers 'from substandard wages and excessive hours' and safeguarding their ability to obtain relief to which they may be entitled). Because the Settlement Agreement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### D.    Final Certification of the Settlement Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate

Courts in this Circuit do not always require final certification of FLSA collectives pursuant to 29 U.S.C. § 216(b) for purposes of settlement. *See In re Wells Fargo Wage & Hour Emp. Pracs. Litig.* (*No. III*), 18 F. Supp. 3d 844, 853 (S.D. Tex. 2014) ("[C]ourts in the Fifth Circuit have never imposed such a [final certification] requirement and the court is not persuaded that it is necessary or appropriate."). The Parties here have agreed, however, that for settlement purposes only, certification of the Settlement Collective Members as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) is appropriate. Accordingly, the Court should also finally certify the Settlement Collective under 29 U.S.C. § 216(b).

Plaintiffs assert, and the Defendants do not challenge for settlement purposes only, the Settlement Collective Members are "similarly situated" for settlement purposes because (1) DAs worked under the same conditions and compensation policies; (2) were subject to the same alleged unlawful practices in that they worked more than 40 hours per week but, Plaintiffs allege, did not receive payment for all overtime hours worked or at the proper overtime rate; and (3) the same defenses apply to all Members since Defendants deny the allegations in this matter with respect to all DAs. Further, fairness and procedural concerns counsel in favor of final certification, which will enable the Settlement Collective Members the option to receive compensation for their unpaid wage and hour overtime without the need to file individual actions. Plaintiffs' Counsel has settled

similar cases involving Amazon and third-party delivery companies, which have been approved by federal district courts (including this one) as fair and reasonable. *See, e.g., Sizemore-Easter et al v. Amazon.com, Inc. et al*, No. 5:23-cv-00164 (W.D. Tex. April 24, 2023) (ECF No. 20); *Southern Star Express, LLC v. Dorian J. Page*, No. 5:19-cv-01423-DAE (W.D. Tex. Mar. 31, 2021) (ECF No. 43) (Exhibit A); *Starnes et al v. Amazon.com, Inc. et al* (E.D. Pa. June 2, 2023) (ECF No. 31); *Gaines v. Amazon.Com, LLC*, No. 1:19-cv-00528-WMR (N.D. Ga. June 22, 2020) (ECF No. 72); *Green v. Amazon.com, LLC et al.*, No. 1:18-cv-1032 (M.D.N.C. Oct. 26, 2020) (ECF No. 38); *Gongaware v. Amazon.com, LLC et al.*, No. 1:18-cv-08358 (N.D. Ill. May 24, 2021) (ECF No. 101). Accordingly, collective action treatment pursuant to 29 U.S.C. § 216(b) is appropriate for purposes of settlement.[2]

---

[2] The Settlement also provides that the two Named Plaintiffs will each receive an additional negotiated payment for their broader general release of claims that each has agreed to as separate and independent consideration by signing the Settlement Agreement, and in recognition of their respective services provided to all Settlement Collective Members. The proposed additional payments in exchange for a general release of claims to the Named Plaintiffs do not otherwise impact the fair and reasonable resolution of a *bona fide* dispute. Here, the named plaintiffs bargained away additional rights beyond the scope of the wage-hour claim release, and in addition in recognition of their service to the collective. Further, "courts approve service awards for named plaintiffs and class representatives insofar as they are reasonable." *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *4 (S.D. Tex. Jan. 31, 2018) (internal quotation omitted); *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving incentive award to named plaintiffs because "[p]laintiffs' commitment undoubtedly led to the proposed settlement fund"). It is particularly appropriate to compensate named representative plaintiffs with service awards where they have actively assisted counsel in their prosecution of the case for the benefit of a class. Here, the proposed payments are justified by the benefit that Plaintiffs have brought to the Settlement Collective. Plaintiffs each took significant risks in coming forward to represent the interests of their fellow workers, including risking their reputations in the community and in their field of employment, in order to participate in this case on behalf of the Settlement Collective. Schalman-Bergen Decl. ¶¶ 37-39. Plaintiffs worked with Counsel, providing background information about their employment, providing information about Defendants' policies and practices, and providing information to support the allegations in this matter. The payments do not otherwise impact the fairness and reasonableness of the settlement and are consistent with similar payments in similar cases. *See, e.g., Sizemore-Easter et al v. Amazon.com, Inc. et al*, No. 5:23-cv-00164, ECF No. 20 (W.D. Tex. April 24, 2023) (ECF No. 20).

### E.    The Request for Attorneys' Fees and Costs Should be Approved

A plaintiff in an FLSA case may recover their attorneys' fees and expenses under the statute's fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) (award of attorney's fees under Section 216(b) of the FLSA is mandatory); *Riddle v. Tex-Fin, Inc.*, No. CIV.A. H-08-3121, 2011 WL 1103033, at *5 (S.D. Tex. Mar. 22, 2011).

The Court may begin its analysis of a contingent attorney fee award by looking at fees awarded in other courts, particularly in the Fifth Circuit. The Fifth Circuit recognizes that contingency fees are desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643–44 (5th Cir. 2012). While the Fifth Circuit has not expressly adopted the percentage method over the lodestar method for common fund lawsuits, "[n]umerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005).

The Fifth Circuit recognizes that trial courts have the discretion to award fees based solely on a percentage of the fund approach. *See, e.g., Hiser*, 2021 WL 2934896, at *3 (approving attorneys' fees as 40% of the common fund in an FLSA action based on the terms of the settlement agreement and holding the "[c]ourt finds that the attorney's fees provision in the settlement agreement is fair and reasonable"). In FLSA cases such as this,[3] courts in this Circuit regularly

---

[3] Other types of actions may involve concerns not present in an FLSA matter such as this. For

approve attorneys' fees amounting to 40% or more of the settlement amount in FLSA cases.  *See e.g., id.* at *3 (approving attorneys' fees as 40% of the common fund in an FLSA action); *Legros v. Mud Control Equip., Co.*, No. 15 1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017); *see also Comeaux v. Quality Energy Servs., Inc.* No. 6:15 CV 02510 RGJ PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%).  And here, as part of the negotiations that led to the Settlement Agreement, the Parties agreed to negotiated contingency award of one-third (33.33%) of the Gross Settlement Amount for attorneys' fees – less than the 40% that is regularly approved, which Plaintiffs submit is reasonable and supports approval here.

In evaluating whether fee awards, the Court may look at the factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors include: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

Given that Plaintiffs Counsel's request of one-third is already significantly below the 40% award that is often granted, Plaintiffs respectfully submit that none of the *Johnson* factors warrant a further downward departure from Plaintiffs' Counsel's requested fees.  Nonetheless, Plaintiffs discuss these factors, in turn, below.

---

example, Rule 23 class actions have unique procedural rules not applicable to an FLSA case, and notably bind nonparticipating class members, while an FLSA action requires an affirmative decision by potential collective members to opt-in.

**First**, "the most critical factor in determining a fee award is the degree of success obtained" (factor 8). *Singer v. City of Waco, Tex*., 324 F.3d 813, 829 (5th Cir. 2003). Here, and as described above, the Gross Settlement Amount represents a significant recovery on behalf the Settlement Collective Members in light of the known risks of the case. For instance, Defendants argued that the Settlement Collective were properly paid overtime compensation, and further argued that they were not a joint employer, and were therefore not responsible for the alleged pay violations at issue. Settlement Collective Members will undeniably receive the benefits of the settlement here that they would otherwise not be able to recover. In sum, the Settlement represents a positive result given the circumstances of the lawsuit and, thus, the "amount involved and results obtained" factor supports the proposed fee award.

**Second**, there are numerous disputed issues of fact and law, including, specifically, whether Plaintiffs and the Settlement Collective Members were paid proper overtime compensation (factor 2). Defendants denied all of the allegations and denied that they are liable or owe damages. Amazon further denies that it jointly employed the Settlement Collective Members. Because Defendants had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to obtain and maintain certification in the action, an outcome of zero recovery for Plaintiffs and the Settlement Collective Members remained possible.

**Third**, the wage and hour issues in this matter are governed by the highly technical FLSA and federal regulations. Plaintiffs' Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis (factor 9). *See* Schalman-Bergen Decl. ¶¶ 41-42. Plaintiffs' Counsel thus had the requisite skill to perform the legal services required in this complex litigation (factor 3).

And as is described in detail in the declaration submitted herewith, Plaintiffs' Counsel have shown their ability by achieving the positive result obtained for Plaintiffs and the Settlement Collective. Plaintiffs' Counsel undertook significant risk in agreeing to represent Plaintiffs (factor 10). The risk assumed by Counsel is similar to that recognized by district courts in the Fifth Circuit. *See Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) ("Factors [ ] such as the financial burden on counsel and the demands of handling a class action of the size and complexity as set forth, may cause a case to be considered 'undesirable.'") (internal citations omitted). And Plaintiffs' Counsel took on these matters at the exclusion of other matters (factor 4). A significant portion of Plaintiffs' Counsel's practice involves matters representing delivery associates, and this time could otherwise have been spent on other matters. *See* Schalman-Bergen Decl. ¶ 44.

The experience, reputation, and ability of Plaintiffs' Counsel therefore, supports the requested fee award (factors 3, 4, 9 and 10). *See Stepp*, 2019 WL 13094637, at *2 (approving FLSA settlement where "[t]he parties [we]re represented by counsel experienced in FLSA disputes and reached a settlement after months of arms-length negotiation").

**Fourth**, and as noted above, Plaintiffs' Counsel agreed to represent Plaintiffs on a contingency fee basis (factor 6). *See* Schalman-Bergen Decl. ¶¶ 45-47. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245–46 (4th Cir. 2010). "Access to

14

the courts would be difficult to achieve without compensating attorneys for that risk." *Id.*

In this case, Plaintiffs' Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. *Id.* ¶ 47. This factor thus weighs in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent Plaintiffs on a contingency fee basis. By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. *See Fuchs v. B & B Star Air Duct & HVAC, LLC*, No. 1:20-CV-319-RP, 2021 WL 2768851, at *2 (W.D. Tex. Jan. 7, 2021) ("[T]he [contingent] attorney's fees and costs provisions of the settlement are appropriate and align with the remedial purposes of the FLSA"); *Diaz v. World Accpeptance Corp.*, No. 1:19-CV-957-RP, 2021 WL 2709677, at *2 (W.D. Tex. Jan. 7, 2021) (holding same approving attorneys' fees as one-third of settlement).

The Fifth Circuit recognizes that a contingency fee is desirable because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt*, 669 F.3d at 643–44; *Stanley*, 2021 WL 256821, at *2 (approving FLSA settlement which included 35% contingency attorneys' fees); *Fuchs*, 2021 WL 2768851, at *2 ("The Court finds that the [40%] contingency fee provided is appropriate and declines to adjust it.").

As described above, the requested contingency award of one-third is less than what is regularly awarded, further supporting its reasonableness. (factors 5, 6, and 12). *See Fuchs*, 2021 WL 2768851, at *2 (approving 40% attorneys' fees award); *Hiser*, 2021 WL 2934896, at *3 (approving 40% fee award and holding "this percentage is in line with that courts have approved in reviewing other FLSA settlements"); *Singer v. Wells Fargo Bank, N.A.*, No. 519CV00679JKPESC, 2020 WL 10056302, at *2 (W.D. Tex. July 14, 2020) ("The Parties'

15

agreement that Plaintiffs' counsel is entitled to a total of forty percent of the gross settlement amount for fees and costs is also reasonable."); *see also Ellis v. Baptist Mem'l* Health *Care Corp.*, No. 3:18-CV-73-SA-JMV, 2021 WL 1206408, at *4 (N.D. Miss. Mar. 30, 2021) (holding 35% fee "has been deemed a reasonable rate within the Fifth Circuit").

**Finally**, Plaintiffs' Counsel collectively have spent hundreds of hours over the course of several years investigating and bringing this case to a successful settlement for the benefit of the Settlement Collective Members, as described above and as summarized in the Declaration of Sarah Schalman-Bergen. Such efforts have included developing the legal theories of Defendants' wage and hour violations; conducting substantial legal and factual research on the alleged violations; engaging in extensive ADR-related discovery; performing an in-depth review of the data and information exchanged, including significant data analysis; attending three mediation sessions; conducting dozens of telephonic and video meet and confer sessions; engaging in written correspondence and negotiations overseen by Mr. Clifford; and finalizing the Settlement Agreement. *See* Schalman-Bergen Decl. ¶ 48. Moreover, Plaintiffs' Counsel will perform additional work that will be necessary to bring this settlement to a conclusion, including overseeing the administration of the settlement. *Id*. Factors 1 and 7 support the requested fee.[4]

In sum, given that the requested fee is significantly less than the percentages routinely approved by Courts in this Circuit for similar matters, and giving the significant efforts performed by Plaintiffs' Counsel over a series of years to bring this settlement to fruition, the requested fee

---

[4] Factor 11 also supports the requested fee. Representing employees in wage and hour matters are different than defense firms which have a steady book of corporate clientele. Typically, defense firms' clients require continuous legal services from their counsel. Comparatively, it is unlikely that many plaintiffs will be seeking additional representation from a plaintiffs' counsel after the conclusion of a lawsuit. The wage claims asserted in this matter do not lend themselves to continuous, long-term attorney-client relationships. This factor thus weighs in favor of the requested fee award

of 1/3 of the Gross Settlement should be approved.

F.    **Plaintiffs' Counsel's Expenses Should be Approved**

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). "Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award." *Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *9 (S.D. Tex. May 7, 2008).

Plaintiffs' Counsel's expenses incurred in this Lawsuit, which total $5,214.50, are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, and computerized legal research. Schalman-Bergen Decl. ¶ 50. All of these expenses were reasonable and necessary for the successful prosecution of this matter.

IV.    <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court issue an order: (1) approving the Settlement Agreement as a fair and reasonable compromise of a *bona fide* dispute; and (2) dismissing this action is in its entirety, subject to the terms of the Settlement Agreement.

Dated: July 12, 2023                                  Respectfully submitted,

                                                      <u>s/ Sarah R. Schalman-Bergen</u>
                                                      Sarah R. Schalman-Bergen
                                                      Texas Federal Bar ID No. 2330780
                                                      Krysten Connon
                                                      LICHTEN & LISS-RIORDAN PC
                                                      729 Boylston Street, Suite 2000
                                                      Boston, MA 02116
                                                      Direct: (267) 256-9973
                                                      Main: (617) 994-5800
                                                      Fax: (617) 994-5801
                                                      ssb@llrlaw.com
                                                      kconnon@llrlaw.com

17

Michaela Wallin
Alexandra K. Piazza
Texas Federal Bar ID No. 315240
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
mwallin@bm.net
apiazza@bm.net

Ryan Allen Hancock
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Tel.: (215) 656-3600
Fax: (215) 567-2310
rhancock@wwdlaw.com

*Attorneys for Plaintiffs and the Proposed
FLSA Collective*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been

filed on the ECF docket and is available for viewing and download on this 12th day of July, 2023.


*s/ Sarah R. Schalman-Bergen*
Sarah R. Schalman-Bergen